IN THE MATTER OF THE ESTATE OF EDWIN S. DICKER-SON, DECEASED (WOODWARD TINGLE DICKERSON AND CAMDEN TRUST COMPANY, TRUSTEES), PLAIN-TIFFS-APPELLANTS, v. E. STUART DICKERSON, JR., GUARDIAN *AD LITEM* FOR ADRIENNE S. DICKERSON, HARRY C. THOMPSON, 4th, AND EDWIN STUART THOMPSON, MINORS, AND ELIZABETH E. DICKERSON, TRUSTEE FOR ADRIENNE STUART DICKERSON AND ELIZABETH DICKERSON THOMPSON, DEFENDANTS-RESPONDENTS.

Argued May 20, 1957—Decided June 20, 1957.

Mr. *Frederick P. Greiner* argued the cause for appellants (*Messrs. Richman and Berry* and *Messrs. Archer, Greiner, Hunter & Read,* attorneys).

Mr. *Charles F. Richman* argued the cause for respondents.

The opinion of the court was delivered by

WEINTRAUB, J.   The issue is whether expenditures on behalf of one testamentary trust were properly charged by the trustees against another trust created by the same instrument.   Exceptions to the account were disallowed by the trial court.   The Appellate Division reversed and we granted certification.   *In re Dickerson's Estate,* 23 *N. J.* 258 (1957).

The will of Edwin S. Dickerson set up a homestead trust and a residuary trust.   The homestead trust embraced the family residence together with household furnishings and effects.   As adjudged in earlier litigation in the former Court of Chancery, testator's wife and son Woodward Tingle Dickerson received successive life estates under the homestead trust with the rights and duties of life tenants. *Woodward Tingle Dickerson, et al., Executors v. Margaret W. Dickerson, et al. (Docket No.* 147–184).   The will provides that upon the termination of the life interests "my said trustee shall convey said property to the heirs of my said son Woodward Tingle Dickerson."

Between May 26, 1949 and April 6, 1955 the trustees expended with respect to the homestead $433.17 for insurance premiums to protect the remaindermen and $642.18

to replace an oil burner and to repair hurricane damage, items which were found to fall outside the obligation of the life tenant. The homestead trust being without funds or income, the trustees charged these items against income and principal respectively of the residuary trust, under which the exceptants are some of the beneficiaries.

■ Although it may eventuate that the remaindermen under both trusts will be the same and that the charges in question will not impair the full benefits payable to the exceptants, we must here accept the premise that the charges will militate against beneficiaries under the residuary trust who have no interest in the homestead trust. We agree with the Appellate Division that where two distinct trusts are set up in a will with different beneficial interests, a deficit resulting from the administration of one trust estate cannot be charged against the other, unless it is found that the testator intended that course. *Green v. Green,* 134 *N. J. Eq.* 479 (*Ch.* 1944).

The trustees contend that the will does reveal an intention to saddle the deficit upon the residuary trust. They stress the direction to them to convey the homestead to the heirs of Woodward upon the conclusion of the life interests, a direction which cannot be met if the remainder is not maintained or if it should be sold to satisfy the charges. Accordingly, they would read the requisite authority for the action they took in the provision in the concluding paragraph of the will which nominates the executors and trustees and gives them "full power to sell and convey any and all of my real estate that may be necessary to properly settle my estate or carry out the trusts herein provided." They add that one parcel of real estate, part of the residue, was in fact sold and yielded a great deal more than the items here involved and thus the necessary funds were in fact available.

It seems to us that the power of sale was intended to have its conventional role to enable the trustee to execute the express provisions of the will. We cannot read into it authority to alter the respective interests of the beneficiaries

of the several trusts. Accordingly, we agree with the holding of the Appellate Division to that effect.

However, the direction to the trustees to convey the homestead to the heirs of Woodward manifests an intention that the property be preserved to that end. He did not expressly impose the obligation to preserve upon the life tenants, and it was so adjudged in the earlier litigation mentioned above. The identity of the remaindermen being unascertainable until Woodward's death, the testator knew the remaindermen could not themselves act to protect their interests. He therefore must have intended the responsibility to rest with the trustees to whom he devised the homestead with the mentioned direction to convey to the remaindermen. The testator's intention thus being evident, we must find by implication authority in the trustees sufficient to satisfy the duty imposed upon them.

The circumstances justify the inference that the testator intended to empower the trustees to borrow on the credit of the homestead trust to preserve the *res*. 2 *Scott, Trusts* (*2d ed.* 1956), *sec.* 191.3, *p.* 1453; 4 *Bogert, Trusts and Trustees* (1936), *sec.* 751, *p.* 3; *cf. Schulting v. Schulting,* 41 *N. J. Eq.* 130, 132 (*Ch.* 1886). The homestead being without funds or income, a mortgage loan from outside sources would not be feasible or safe. The trustees therefore must look within the decedent's estate for the necessary advances, and the residuary trust is the only available source. The residuary trust may be tapped for this purpose without conceivable prejudice to the exceptants, and the advances are well secured by the value of the homestead. As stated above, the authority to be inferred should be that which is necessary to fulfill the testator's purpose, and although on that basis we cannot infer an intent to visit the ultimate burden upon the beneficiaries of the residuary trust, we do conclude that the trustees could properly advance the funds from that trust against the security of the homestead trust, the advances to be repaid to the residuary trust upon the termination of the life tenancies, with interest thereon at a reasonable rate.

The judgment of the Appellate Division is modified accordingly, and as so modified, it is affirmed.   No costs.

*For   modification*—Justices   OLIPHANT,   WACHENFELD, JACOBS and WEINTRAUB—4.

*For affirmance*—Justice HEHER—1.